OPINION
{¶ 1} Kimberly Cheadle appeals from the trial court's decision and entry finding her entitled to 28.25 percent of appellee Charles Dean's military retirement benefits and overruling her motions for contempt sanctions and for attorney fees.
 {¶ 2} Cheadle advances four assignments of error on appeal. First, she contends the trial court erred in finding her entitled to 28.25 percent rather than 34.3 *Page 2 
percent of the military retirement benefits. Second, she claims the trial court erred in not holding Dean in contempt for failing to designate her to receive survivor benefits. Third, she asserts that the trial court erred in not holding Dean in contempt for failing to maintain life insurance for her benefit. Fourth, she contends the trial court erred in not awarding her attorney fees in connection with her contempt motions.
 {¶ 3} The record reflects that Cheadle and Dean married in 1980 and obtained a dissolution in 1995. At the time of the dissolution, Dean was a dentist in the U.S. Air Force. The trial court's 1995 final judgment and decree of dissolution incorporated a separation agreement that addressed, inter alia, retirement and insurance benefits. With regard to retirement benefits, the agreement stated:
 {¶ 4} "It is the agreement of the parties that the portion of the retirement benefits of the PARTIES which were earned during this marriage are a joint marital asset. It is therefore the agreement of the PARTIES that they will divide the accrued benefits equally when they are received.
 {¶ 5} "The measure of each PARTY'S interest in the retirement benefits accrued by the other PARTY shall be the number of years of marriage divided by the eventual number of years of retirement benefit accrual times one half.
 {¶ 6} "The parties shall maintain the survivor benefits for the benefit of WIFE on the retirement benefits and shall share equally the payment of the premium for the said survivor benefits out of the gross receipts from retirement benefits before distribution."
 {¶ 7} With regard to insurance benefits, the separation agreement stated, in part:
 {¶ 8} "It is the further agreement of the PARTIES that HUSBAND shall maintain *Page 3 
the ADA life insurance policy or other life insurance policy of WIFE'S choosing on his own life for the benefit of WIFE in its current amount or Three Hundred Thousand Dollars ($300,000), whichever is greater. WIFE shall pay the premium costs for the policy."
 {¶ 9} Dean retired from the military effective September 1, 2001 at the rank of lieutenant colonel. A dispute subsequently arose regarding the proper division of his retirement benefits. The trial court filed a March 2003 clarifying order in which it found Cheadle entitled to 27.4 percent of Dean's retirement pay.
 {¶ 10} Thereafter, in March 2004, Cheadle filed a combined Civ.R. 60(B) motion for relief from judgment, motion for contempt, and motion for attorney fees. She sought Civ.R. 60(B) relief from the trial court's determination in its clarifying order that she was entitled to 27.4 percent of Dean's retirement pay. According to Cheadle, she actually was entitled to approximately 36 percent. Cheadle also requested contempt findings based on Dean's alleged violation of the separation agreement by (1) failing to maintain survivor benefits on her behalf and (2) failing to maintain life insurance with her named as the beneficiary. Finally, Cheadle moved for an award of reasonable attorney fees.
 {¶ 11} The trial court held a two-day hearing on Cheadle's motions in March and April 2006. At the hearing, the parties recognized that the separation agreement entitled Cheadle to a coverture fraction of Dean's retirement benefits.[1] Specifically, the *Page 4 
agreement provided that Cheadle's interest "shall be the number of years of marriage divided by the eventual number of years of retirement benefit accrual times one half." During the hearing, the parties converted years to months and agreed that the correct numerator for the coverture fraction was either 165 or 166 months. (Hearing transcript at 13-14, 74). The disputed issue concerned the proper denominator. Cheadle argued that the correct denominator was 242 months, which represented the length of Dean's "active service for retirement." For his part, Dean asserted that the correct denominator was 292 months, which represented his years of active service plus credit for prior time he spent in dental school. After hearing testimony from the parties and expert testimony from a witness for Dean, the trial court accepted 292 months as the proper denominator. Using 165 months as the numerator and 292 months as the denominator, the trial court found that 56.51 percent of the military retirement benefits were earned during the marriage and that Cheadle was entitled to half of that amount, or 28.25 percent. As a result, the trial court granted Civ.R. 60(B) relief insofar as its prior clarifying order had awarded her 27.4 percent.
 {¶ 12} The trial court next rejected Cheadle's argument that Dean should be held in contempt for failing to maintain survivor benefits and life insurance. With regard to survivor benefits, the court reasoned that there was nothing for Dean to "maintain" because Cheadle was ineligible for such benefits. As to life insurance, the trial court found a lack of proof that Dean had engaged in any contemptuous conduct. Finally, the trial court rejected Cheadle's attorney fee request based on its finding that Dean was *Page 5 
not in contempt. This timely appeal followed the trial court's issuance of findings of fact and conclusions of law to support its ruling.
 {¶ 13} In her first assignment of error, Cheadle contends the trial court erred in finding her entitled to 28.25 percent rather than 34.3 percent of Dean's military retirement benefits. She specifically challenges the trial court's selection of 292 months as the proper denominator to compute her coverture fraction. She argues, as she did below, that the proper denominator is 242 months. To support her argument, Cheadle relies on retirement records showing that Dean had 20 years, one month, and 27 days of "active service for retirement," or 242 months. The record reflects that "active service for retirement" means the amount of time Dean served on active duty. The parties agree that he was required to have at least 20 years of active duty service to be eligible to retire. Because Dean served on active duty for 242 months (i.e., 20 years, one month, and 27 days), Cheadle insists that the proper denominator for the coverture fraction was 242 months.
 {¶ 14} Upon review, we find her argument to be without merit. Under the separation agreement, the denominator was to be the "number of years of retirement benefit accrual[.]" Although Dean's active duty service was 242 months, the record reflects that his number of years of retirement benefit accrual was 24 years, four months, and three days, or 292 months. The difference arises from the fact that his years of retirement benefit accrual included credit for time he spent attending dental school.
 {¶ 15} Expert witness Edwin Schilling, an attorney who previously worked for the Defense Department evaluating military retirement plans and property division orders, *Page 6 
confirmed that Dean's retirement benefits were computed based on 24 years, four months, and three days of service credit. Although Dean's time in dental school did not count toward the 20 years of active duty service needed to retire, Schilling demonstrated that it did count toward his accrual of retirement benefits. This fact was confirmed by retirement pay computations performed by the Defense Finance and Accounting Service at the time of Dean's retirement. Those computations, which were introduced into evidence at the hearing, reveal that 24.33 years of service (i.e., 292 months) were multiplied by two and one-half percent to calculate gross monthly retirement pay of $3,628, which represented 60.83 percent of Dean's final active duty pay. As a result, the record makes clear that "the number of years of retirement benefit accrual" was 24 years, four months, and three days, or 292 months, and not 242 months. Therefore, we find no error in the trial court's use of 292 months as the denominator in Cheadle's coverture fraction.[2] The first assignment of error is overruled.
 {¶ 16} In her second assignment of error, Cheadle claims the trial court erred in not holding Dean in contempt for failing to designate her to receive survivor benefits. As set forth above, the separation agreement provided that "[t]he parties shall maintain the survivor benefits for the benefit of WIFE on the retirement benefits and shall share equally the payment of the premium for the said survivor benefits * * *." Dean admittedly did not designate Cheadle to receive survivor benefits when he retired in 2001. He *Page 7 
contends his failure to do so was inadvertent based on inaccurate advice he received from the government, whereas Cheadle claims he intentionally violated the separation agreement. For its part, the trial court found that Dean did not act in contempt of the dissolution decree, which incorporated the separation agreement. The trial court reasoned that there were no survivor benefits to "maintain" upon Dean's retirement because Cheadle's remarriage rendered her ineligible for them. Cheadle does not dispute her ineligibility for survivor benefits at the time of Dean's retirement. She asserts, however, that if Dean had elected survivor benefits, a right to receive them would arise if her current marriage ends in a divorce or if she becomes a widow.
 {¶ 17} A prima facie case of contempt is made by establishing a prior court order and a violation under its terms. Nielsen v. Meeker (1996),112 Ohio App.3d 448. A court's contempt finding must be supported by clear and convincing evidence. Dozer v. Dozer (1993),88 Ohio App.3d 296, 302. Absent an abuse of discretion, which implies that the court's reasoning is unreasonable, arbitrary, or unconscionable, we will not reverse the trial court's findings. Id. Neither will we weigh the evidence nor judge credibility of witnesses when reviewing factual findings of the trial court relating to its contempt determinations because both of these functions are solely within the province of the trial court. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 18} With the foregoing standards in mind, we find no abuse of discretion in the trial court's refusal to hold Dean in contempt. Based on the literal language of the separation agreement, the trial court was correct when it stated: "* * * Ms. Cheadle was not entitled to survivor benefits as of August 31, 2001 when Mr. Dean retired because of *Page 8 
her remarriage and therefore the credible evidence suggests that Mr. Dean could not have complied with that portion of the parties' prior Decree of Dissolution filed April 25, 1995 which would have obligated him to `maintain' survivor benefits for Ms. Cheadle. In essence, there was nothing to `maintain' * * *"
 {¶ 19} Because there were no survivor benefits to "maintain" at the time of the separation agreement or even later on the date of Dean's retirement, the trial court technically is correct. The separation agreement purported to obligate the parties to "maintain" non-existent benefits. Therefore, Dean could not comply with its terms. We suspect, however, that the purpose of the separation agreement, although poorly drafted, was to protect Cheadle's inchoate right to receive survivor benefits in the future. Nevertheless, based on the wording of the parties' own agreement, we cannot say the trial court abused its discretion in declining to find Dean in contempt.
 {¶ 20} We note too that the separation agreement actually obligatedboth parties, not just Dean, to maintain the survivor benefits. Undisputed testimony reveals that Cheadle had one year after the parties' dissolution to elect survivor benefits on her own without assistance from Dean. (Hearing Tr. at 83-84, 96). Given that both parties had an opportunity to elect survivor benefits upon Dean's retirement, Cheadle's failure to take advantage of the opportunity militates against her effort to hold Dean in contempt for the same inaction. The second assignment of error is overruled.
 {¶ 21} In her third assignment of error, Cheadle asserts that the trial court erred in not holding Dean in contempt for failing to maintain life insurance for her benefit. Cheadle contends Dean's life insurance through the American Dental Association (ADA) was cancelled when he declined to renew his membership in the organization. *Page 9 
According to Cheadle, she attempted to obtain other life insurance on Dean but he failed to cooperate when she insisted on being the policy owner. Cheadle argues that Dean acted contemptuously by allowing the ADA policy to be cancelled and failing to cooperate with her attempt to obtain other life insurance.
 {¶ 22} Upon review, we cannot say the trial court abused its discretion in finding no contempt. As set forth above, the separation agreement obligated Dean to maintain either the ADA policy or other life insurance of Cheadle's choice "on his own life for the benefit of [Cheadle]," with her being responsible for the premiums. The separation agreement did not obligate Dean to keep the ADA policy. Therefore, his act of allowing it to be cancelled was not contemptuous. Moreover, as Cheadle concedes, Dean's lack of cooperation in obtaining a substitute policy stemmed from her insistence on being the owner of the new policy. It is reasonable to infer from the language of the separation agreement, however, that Dean was intended to be the owner of the policy with Cheadle being designated the beneficiary. This is so because the separation agreement required Dean himself to maintain insurance on his own life for her benefit. Although Cheadle was required to pay the premium, the agreement appears to contemplate Dean being the policy owner. Because Cheadle insisted on being the owner of any new policy, the trial court did not abuse its discretion in finding Dean's conduct non-contemptuous. We note, however, that if Cheadle will abandon her insistence on being the owner of a new life insurance policy, Dean will be obligated under the terms of the separation agreement to cooperate with her in obtaining such a policy. The third assignment of error is overruled.
 {¶ 23} In her fourth assignment of error, Cheadle contends the trial court erred in *Page 10 
not awarding her attorney fees in connection with her contempt motions. The trial court rejected the fee request after finding that Dean was not in contempt. Because we have found no abuse of discretion in the trial court's contempt ruling, we likewise find no abuse of discretion in the trial court's denial of Cheadle's attorney fee request. The fourth assignment of error is overruled.
 {¶ 24} Based on the reasoning set forth above, the judgment of the Clark County Common Pleas Court, Domestic Relations Division, is affirmed.
Wolff, P.J., concurs.
[1] "`The coverture fraction takes the total years of marriage divided by the total years of husband's service. Under this method, wife receives half of the coverture fraction multiplied by the value of the pension' at the time of retirement." Benfield v. Benfield (Nov. 7, 2003), Montgomery App. No. 19363, quoting Cox v. Cox (Feb. 1, 1999), Warren App. Nos. CA98-04-045, CA98-05-054. "The result of this method of computation is that the recipient wife obtains a proportionate share of any post-divorce increase in the value of her former husband's pension." Id.
[2] Parenthetically, we note that using 292 months as the denominator also results in a higher amount of retirement pay than 242 months. This is so because Dean was entitled to two and one-half percent of his final salary for every year of service. Thus, although Cheadle's benefit is smaller in percentage terms using 292 months as the denominator, she receives a smaller piece of a larger retirement check.